Shaw, C. J.
The plaintiffs, having been taxed for real estate situated in Cambridge, paid the tax under protest, and now bring their action to recover it back, on the ground that they were not liable to be taxed for such real estate. The plaintiffs insist that this estate is wholly exempted from taxation, on the ground that it was granted to them by the commonwealth for a public use. Their road was laid out according to their charter, five rods wide, and was located accordingly. The tax is assessed on land lying outside of the said location of five rods, and appropriated to the erection of car-houses, wood-houses, and other buildings to be used exclusively for the purposes of the railroad. The rule was laid down in the case of Worcester v. Western Railroad, 4 Met. 564, which we think must govern this. The charter and the general railroad act having prescribed the width of five rods as the land to be appropriated specifically to public use, the court were of opinion that this constituted the limit, to which these companies can claim an appropriation of land for public use, as well for car-houses, passenger-houses, warehouses, and other buildings for the use of the company, as for the track and road-bed, with a few exceptions not affecting this question, unless a larger space is thus specially appropriated. And in a more recent case it was held, that the grant of a railroad to pass over land, the property of the commonwealth, could not be construed as an appropriation to public use, and warrant the conclusion that the legislature intended to grant the right to take the land of the commonwealth, without compensation, unless such intention was manifested by express terms or necessary implication; and that no such intention appeared in that charter. Commonwealth v. Boston & Maine Railroad, 3 Cush. 25.
*239 As these companies are authorized to take and hold land by purchase, if all the land thus purchased should so far be deemed property appropriated to public use, as to exempt it from taxation, we think this would not be in conformity with the manifest object and policy of the legislature; and as no other limit than the five rods is mentioned, that must be the limit as a general rule. We have no doubt that the legislature would have power to appropriate a larger width of land, and declare it public, and exempt from taxation, when any special exigency might in their judgment require it; but we are of opinion, that if such were the intent, it would be done in express terms, or by fair implication. Indeed, the power of the legislature to provide for such exemption, to meet any special exigency, strengthens the conclusion, that the limit is intended to be fixed at five rods, where no such intent is shown.
The only consideration, which is relied on to distinguish this from the cases cited, is that the land thus taxed, before it was filled up, was part of the public domain, and the right to fill it up for the use of engine-houses, was granted to the company by a special act, St. 1845, c. 224, § 1. In looking at this act, it manifests great caution to do nothing more than grant the use of the soil, over and upon which the road by its charter had been located five rods, to a somewhat larger width. We can perceive nothing in this case to distinguish it from a case, where solid land is granted to the railroad corporation by a private proprietor, or even by the commonwealth, if unaccompanied with any intention to grant any other privilege, than that which belongs to land bought by the proprietors of the road, beyond the limits of the five rods. So construing this grant, it comes within the rule already adopted, according to which this estate was not exempt from taxation.

Judgment, for the defendants